UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

GABRIEL SILLS,

    Petitioner,

    v.

B. KOEHN (Warden); and ELLEN F. ROSENBLUM (Att. Gen. of OR),

    Respondents.

Case No. 1:15-cv-00811-MTK

**OPINION AND ORDER**

KASUBHAI, District Judge.

    Petitioner brings this federal habeas action pursuant to 28 U.S.C. § 2254 and challenges his state court conviction for Sexual Abuse on grounds of trial court error and actual innocence. Petitioner's claims of trial court error were denied by the Oregon courts in decisions that are entitled to deference and he fails to present new evidence showing that he is probably innocent. Accordingly, the Petition is DENIED.

1   - OPINION AND ORDER

## BACKGROUND

On June 8, 1999, Petitioner was charged by indictment with Sexual Abuse in the First Degree, Public Indecency, and Furnishing Obscene Materials to Minors. Resp't Ex. 102. The charges arose from the following facts, as recounted by the Oregon Court of Appeals:

> The event relating to the sexual abuse count occurred in June 1999. The victim, H, was a 13-year-old girl who was walking home from school with two friends when she saw [Petitioner] walking ahead of them. [Petitioner] turned around, walked by the girls, and grabbed H's breast with his hand for several seconds. The girls eventually ran to a neighboring house and contacted police[.]
>
> The event leading to the public indecency count occurred the next day, when [Petitioner] exposed himself to J, a 13-year-old girl who was walking home from the school bus stop. As J walked by, [Petitioner] leaned his head out of his parked truck and said something. J could not hear [Petitioner], so she went closer to the truck. As she approached, [Petitioner] showed her a pornographic magazine and asked her if she wanted it. J said no and began to walk away. [Petitioner] then put down the magazine, exposing himself, rubbed his penis, and asked J, "Do you want some of this Honey?" J then fled, screaming. People nearby were able to get the license plate number of the truck before [Petitioner] sped away.
>
> [Petitioner] was arrested the same day and was later indicted for sexual abuse in the first degree, public indecency, and furnishing obscene materials to a minor. [Petitioner] pleaded guilty to public indecency, and a demurrer was granted on the furnishing obscene materials count.

*State v. Sills*, 260 Or. App. 384, 386-87 (2013).

After trial by jury on the sexual abuse charge involving H, the jury unanimously found Petitioner guilty and sentencing was scheduled for August 4, 2000. Tr. 651; Resp't Ex. 105 at 59. Petitioner, who had posted bail, fled the jurisdiction and "lived in California under an assumed name." *Sills*, 260 Or. App. at 387; Sentencing Transcript (Tr.) Aug. 4, 2000 at 1-2.

> In 2006, [Petitioner] was arrested in California for possession of child pornography and for sex crimes involving a four-year-old girl. The State of Oregon quickly learned in 2006 that [Petitioner] had been arrested; however, the state could not secure [Petitioner's] return to Oregon until after his pending charges in California were resolved. After his conviction by way of a guilty plea, he was sentenced in California in December 2008, with his earliest parole date in 2021.

2   - OPINION AND ORDER

> After his California sentencing, the Jackson County District Attorney's Office sought a detainer on [Petitioner], and, in April 2009, [Petitioner] requested to be brought to "trial" in Oregon under the IAD [Interstate Agreement on Detainers], although the district attorney never received [Petitioner's] demand. Later in 2009, California officials told [Petitioner] that the IAD was inapplicable to a sentencing proceeding, and California did not proceed under the IAD.
>
> … In 2009, the district attorney's office pursued [Petitioner's] return for sentencing under the Uniform Criminal Extradition Act.…Governor Kulongoski, in March 2010, and California Governor Schwarzenegger, in April 2010, then signed an executive agreement for [Petitioner's] extradition. It provided that [Petitioner] would be transported to Oregon for sentencing and then returned to California to serve the remainder of his California sentence.

*Id.* at 387-88 (citations omitted).

Petitioner was returned to Oregon and on July 2, 2010, the trial court imposed a 75-month term of imprisonment, to be served consecutively to his California sentence. Resp't Ex. 101 at 2; Sentencing Tr. July 2, 2010 at 29.

Petitioner directly appealed, asserting four counseled and six pro se assignments of error. Resp't Exs. 103-04. In a written opinion, the Oregon Court of Appeals held that Petitioner's claim of insufficient evidence was "without merit," his sentence was not unconstitutionally disproportionate, and no IAD violation occurred when he was returned to Oregon. *Sills*, 260 Or. App. at 386 & n.1, 398-400. The Oregon Court of Appeals dismissed Petitioner's remaining assignments of error under the "former fugitive doctrine." *Id*. at 392-94. The Oregon Supreme Court denied review. Resp't Exs. 109-10.

Petitioner filed this federal habeas action and later obtained a stay and abeyance to pursue a petition for post-conviction relief (PCR) in state court. Resp't Ex. 113. Respondent moved to dismiss the PCR petition under the former fugitive doctrine, and the PCR court granted the motion. Resp't Exs. 116, 121-23. Petitioner appealed, and the Oregon Court of Appeals affirmed without opinion Resp't Exs. 125, 127. The Oregon Supreme Court granted review and reversed,

3    - OPINION AND ORDER

holding that the former fugitive doctrine did not support the dismissal of Petitioner's PCR petition. Resp't Ex. 134-35; *Sills v. State*, 370 Or. 240 (2022). On remand to the PCR court, Petitioner voluntarily dismissed his PCR petition. Resp't Exs. 137-40.

The Court lifted the stay in this action and allowed each party to submit additional briefing. The Petition is now ripe for review.

## DISCUSSION

Petitioner alleges the following eight Grounds for Relief in his Petition and asserts violations of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments:

1) the evidence does not support the jury's verdict and Petitioner is actually innocent;

2) the trial court erroneously allowed the admission of bad acts evidence;

3) the trial court infringed on Petitioner's right to call witnesses and prepare a defense;

4) the trial court erroneously admitted suggestive identifications;

5) the trial court erroneously admitted Petitioner's custodial statements;

6) the State violated Petitioner's right to a "speedy final disposition" under the IAD;

7) cumulative trial court errors denied Petitioner a fair trial; and

8) Petitioner's sentence is unconstitutionally disproportionate to the underlying conduct.

*See* Pet. (ECF No. 2 at 6-9).

Respondent argues that Grounds Two through Five and Seven are barred from review through procedural default, because the Oregon courts denied them on an adequate and independent state ground. Respondent further argues that part of Ground One and Grounds Six and Eight were denied by the Oregon Court of Appeals in a decision that is reasonable and entitled to deference. Finally, Respondent contends that Petitioner fails to show that he is actually innocent.

4    - OPINION AND ORDER

## A. Adequate and Independent State Ground

On direct appeal, the Oregon Court of Appeals dismissed several of Petitioner's assignments of error, corresponding with Grounds Two through Five and Seven, under the former fugitive doctrine. Respondent argues that the doctrine is an adequate and independent state ground that precludes federal review.

Federal review of a habeas claim is barred "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011). To be independent, the state law ground must not be "interwoven with the federal law"; to be adequate, the state law ground must be "firmly established and regularly followed." *Id.* at 316; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *see also Beard v. Kindler*, 558 U.S. 53, 60-61 (2009) (holding that a "discretionary" state rule "can serve as an adequate ground to bar federal habeas review," provided it is also "firmly established" and "regularly followed"); *Wells v. Maass,* 28 F.3d 1005, 1010 (9th Cir. 1994) (explaining that an adequate state ground "must be clear, consistently applied, and well-established at the time of the petitioner's purported default"). While the former fugitive doctrine is a ground independent from the federal questions raised by Petitioner, it is not an adequate ground to bar federal review of Petitioner's claims.

In Petitioner's case, the Oregon Court of Appeals found that an appellate court retains "inherent judicial authority to dismiss a criminal defendant's appeal if the defendant's former fugitive status significantly interfered with the operation of the appellate process." *Sills*, 260 Or. App. at 388. Exercising this authority, the court applied the former fugitive doctrine to Petitioner's guilt phase challenges, finding that, if Petitioner obtained a new trial, the State would

5   - OPINION AND ORDER

be unduly prejudiced by the substantial delay caused by Petitioner's flight from justice. *Id.* at 392-93. The Oregon Supreme Court denied review. Resp't Ex. 109.

Recently, however, the Oregon Supreme Court disavowed the reasoning employed by the Oregon Court of Appeals on Petitioner's direct appeal. *See State v. Satter*, 372 Or. 273 (2024). The Oregon Supreme Court emphasized that it "ha[d] yet to decide whether to embrace [the former fugitive] doctrine for Oregon appellate courts" and "assume[d] without deciding that the Court of Appeals has inherent authority to dismiss a defendant's appeal when the defendant's former fugitive status 'significantly interfered with the appellate process.'" *Id.* at 277, 279. However, the Court disagreed that prejudice to the State on remand justifies the dismissal of an appeal when the defendant's flight did not occur during the appellate process. It explained that "when the fugitive status is confined to the trial court and the identified prejudice will arise only on remand, the defendant's flight lacks 'the kind of connection' to the appellate process that would justify *an appellate court* refusing to carry out a process to which the former fugitive is statutorily entitled." *Id.* at 279 (cleaned up; emphasis in original).[1] Thus,

> [w]hen confronted with concerns that a defendant's former flight from the jurisdiction of the trial court would cause actual prejudice in any retrial, or that the defendant might again fail to appear for any retrial, *the Court of Appeals should nevertheless proceed to the merits of the appeal, leaving those concerns to be addressed by the trial court on any remand*, as the trial court will be in a superior position to resolve factual disputes and tailor an appropriate remedy – including by determining that actual prejudice to the state justifies denying the defendant a new trial and reinstating the original judgment.

---

[1] In so ruling, the Oregon Supreme Court relied on the reasoning in *Ortega-Rodriguez v. United States*, where the United States Supreme Court "held that the federal circuit court erred in applying a blanket rule of dismissal to all appeals filed by former fugitives – those who had fled while their case was pending in the trial court but had been recaptured before sentencing and appeal." *Id.* at 280 (citing *Ortega-Rodriguez*, 507 U.S. 234 (1993)). The Oregon Supreme Court also relied on its decision reversing the dismissal of Petitioner's PCR petition, finding that "the prejudice on which the state relies here lacks 'the kind of connection' to the post-conviction process that could justify dismissal without reaching the merits of a petition for post-conviction relief." *Sills v. State of Oregon*, 370 Or. 240, 450 (2022).

**6   - OPINION AND ORDER**

*Id.* at 279-80 (emphasis added).

Given the reasoning of *Satter* and the Oregon Supreme Court's express statement that it has never "endorsed" or applied the former fugitive doctrine in circumstances similar to Petitioner's, I am not inclined to find that the doctrine qualifies as a well-established and consistently applied Oregon rule that bars federal habeas review.

### B. Deference to State Court Decisions

Pursuant to 28 U.S.C. § 2254(d), this Court may not grant a petition for a writ of habeas corpus filed by a state prisoner with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) and (2).

The Oregon Court of Appeals rejected part of Ground One and Grounds Six and Eight on the merits, and Respondent maintains that its decision is entitled to deference under § 2254(d). Although the Oregon Court of Appeals did not reach the merits of Grounds Two through Five and Seven, the trial court rejected those claims and the deferential standard of § 2254(d) likewise applies to the trial court's decisions. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991) (providing that the last reasoned decision by the state court forms the basis of review by the federal habeas court); *Comstock v. Humphries*, 786 F.3d 701, 707 (9th Cir. 2015) (accord).

A state court decision is "contrary to" clearly established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an

7   - OPINION AND ORDER

"unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). A petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Thus, "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001).

### 1.  Ground One:  Insufficient Evidence

In Ground One, Petitioner argues that the evidence at trial was insufficient to support his conviction. Petitioner essentially disputes the evidence at trial and contests H's and the other witnesses' identification of him. In finding this claim "without merit," *Sills*, 260 Or. App. at 386, n.1, the Oregon Court of Appeals did not unreasonably apply clearly established federal law.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a jury's verdict may be set aside on grounds of insufficient evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. The United States Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

> First, on direct appeal, …[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Id.* (citations omitted).

**8    - OPINION AND ORDER**

The Court of Appeals' rejection of this claim was not unreasonable when H and other witnesses positively identified Petitioner as the assailant. Trial Tr. June 6, 2000 at 130-32, 158-59, 181-82, 376-79. Thus, Petitioner is not entitled to federal habeas relief on this claim.

### 2. Ground Two: Admission of Bad Acts and Character Evidence

As recounted above, on the day after H's assault, Petitioner exposed himself to J, another teen, as she walked home from school. Witnesses saw the encounter and provided Petitioner's license plate number to the police. J and at least one witness positively identified Petitioner as the perpetrator and Petitioner eventually pled guilty to Public Indecency.

Before trial on the sexual abuse charge, Petitioner sought to exclude evidence of his Public Indecency offense. Resp't Ex. 103 at 54-55. The trial court denied the motion and found that Petitioner's conduct was "logically relevant" and admissible under Oregon law as probative of motive, intent, and identity. Trial Tr. June 6, 2000 at 16. The trial court found:

> We've got the six questions … Does the present charged act require proof of intent? Yes. Does the prior act require intent? Yes. Was the victim in the prior act the same victim or in the same class as the victim in the present case? Yes. I think that's one of the factors that the Court can consider. Both are young women. One I think was 13, one 14, both accosted on the way home from school for the perpetrator's purposes of sexual gratification. The victims are basically in the same class of people.
>
> Fourth issue, was the type of prior act the same or similar to the acts involved in the charged crime? Although there are some differences, we basically have the same issues, young woman accosted on the way home from school for the defendant's sexual gratification. Fifth, were the physical elements of the prior act and the present act similar? Same, we're talking about that. Again, although there are some differences, there certainly are some similarities. And we also have the issues of one being one day apart.
>
> ***
>
> [I]t's really within probably a few minutes' time the next day, both I think shortly after 4:00. And the location is basically in the same quadrant of Medford, both in the southeast Medford area. And the Defendant has ties to the area very close to both incidents.

9    - OPINION AND ORDER

\*\*\*

> I think … this is pretty aggressive behavior as far as public indecency goes on the one that happened on Barnett Road. And the incident that happened on Lindley was also pretty aggressive involving physical contact with a stranger.

Trial Tr. June 6, 2000 at 13-15. The trial court thus allowed the State to introduce evidence that Petitioner exposed himself to J the day after H was assaulted.

"A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *see also id.* ("Thus, a federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair."). No clearly established Supreme Court precedent holds that the admission of bad acts evidence renders a trial fundamentally unfair, and under § 2254(d), the trial court's decision was not unreasonable. *See, e.g.*, *Mejia v. Garcia*, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (explaining that the admission of propensity evidence is not contrary to clearly established Supreme Court precedent, and the state court did not act unreasonably in finding no due process violation).

Moreover, the incidents involving H and J occurred within one day of each other, the victims were 13-year-old girls walking home from school near Petitioner's workplace or family, Petitioner was a stranger to both girls, and Petitioner fled immediately in both cases. Given these facts and the deferential standard of review, the trial court's admission of Petitioner's conduct involving J was not so arbitrary or prejudicial that it resulted in an unfair trial.

### 3. Ground Three: Alibi Witness

Petitioner claims that the trial court erred by denying Petitioner's pretrial motion to change the trial date to accommodate an alibi witness.

Several days prior to trial, Petitioner's counsel filed a motion to continue on several grounds, including the fact that an alibi witness, Darrel Roush, would not be available. Resp't Ex. 104 at 15-17. The record contains no evidence that the trial court denied the motion. Rather, on the first day of trial, Petitioner's counsel apparently withdrew the motion and expressed concern about the length of trial; counsel made no mention of Roush's unavailability. Trial Tr. June 6, 2000 at 16-17. In fact, the parties stipulated to the admission of Roush's prepared testimony and those statements were read in open court. Trial Tr. June 8, 2000 at 463-65.

On this record, Petitioner fails to show that the trial court interfered with his ability to call witnesses by denying a continuance of trial.

### 4. Ground Four: Suggestive Identification

Petitioner next argues that the trial court erred by granting the State's motion to obtain a photograph of a tattoo on Petitioner's leg, resulting in an impermissibly suggestive identification and a violation of his rights under the Fifth and Fourteenth Amendments. Petitioner's claim is not supported by the record.

In March 2000, the State moved to obtain a photograph of Petitioner's leg tattoo, and the trial court granted the motion. *See, e.g.,* Resp't Ex. 104 at 23. The photograph of Petitioner's tattoo was obtained a few days before trial and long after J and H had identified Petitioner from a photo lineup. Trial Tr. June 7, 2000 at 323-27. Petitioner did not move to suppress any identification of him before or during trial and did not move to exclude the photographs of his tattoo. Further, Petitioner points to no evidence in the record showing that H saw the photograph

11   - OPINION AND ORDER

of Petitioner's tattoo or identified him from it, and a police detective testified that the pictures were not shown to H or her friends who witnessed the assault and identified Petitioner at trial. Trial Tr. June 7 and 8, 2000 at 342, 635.

Thus, Petitioner fails to show that the trial court committed constitutional error by granting the State's motion to obtain a photograph, and he is not entitled to habeas relief.

5. Ground Five: *Miranda* and Sixth Amendment Right to Counsel

Petitioner claims that the trial court erroneously admitted statements elicited by police officers after his arrest on June 3, 1999, in violation of his rights under the Fifth and Sixth Amendments.

Petitioner did not file a pretrial motion to suppress his statements, and the issue of their admissibility arose during trial. Trial Tr. June 7, 2000 at 207. Detective Blair testified that Petitioner invoked his right to an attorney after he was arrested on the public indecency offense involving J. Detective Blair ceased questioning Petitioner and began to gather booking information. Petitioner asked "what was going on" with the investigation and "wanted to know where this occurred and what exactly" the police "were looking at." Tr. June 7, 2000 at 210, 212. Detective Blair advised Petitioner that "there are some other things that [police] are investigating." Trial Tr. June 7, 2000 at 212. Petitioner then said, "Nothing happened other than today." Trial Tr. June 7, 2000 at 216. After Detective Blair wrote down Petitioner's comment, Petitioner said, "I guess you got me there." *Id.* The trial court found that Petitioner's statement was voluntary and not the result of "custodial interrogation." Trial Tr. June 7, 2000 at 213.

Petitioner was transported to the Medford Police Department and detained in a holding cell. Trial Tr. June 7, 2000 at 407. Police officers noticed that Petitioner had a tattoo on his right calf, similar to a tattoo that H observed on her assailant. Trial Tr. June 7, 2000 at 383, 387.

Police officers contacted H and the friends who witnessed her assault, and they positively identified Petitioner from a photographic lineup. Trial Tr. June 7, 2000 at 371-79. Police officers returned to the jail and, after providing *Miranda* rights, questioned Petitioner about the incident involving H. Trial Tr. June 7, 2000 at 382. Petitioner denied being near the street where H was assaulted, wearing shorts or a hat that day, or combing his hair in a ponytail. Petitioner admitted that he was wearing sunglasses and a maroon shirt. Trial Tr. June 7, 2000 at 408-09.

Petitioner objected to the introduction of these statements, and in response, the State emphasized that Officers advised Petitioner of his *Miranda* rights and that Petitioner agreed to talk about the June 2 allegations. Trial Tr. June 7, 2000 at 381-82. The trial court sustained the objection on grounds that Petitioner had invoked his right to counsel when arrested on the public indecency charge and could not be questioned further without an attorney present. Trial Tr. June 7, 2000 at 382. The trial court subsequently reconsidered its ruling and explained:

> [T]he real bottom line -- the real issue is whether or not the statement's knowingly and voluntarily made. And generally the rule is once you request an attorney, the officers should terminate questioning the person.
>
> You know I think … counsel for the State may be correct about if you approach about other incidences. And in the circumstance of this -- these cases, when he's already said, "Nothing happened other than today," it certainly would indicate a possible willingness to try and talk to the police about other incidences, not wanting to talk to the one where he was caught basically red handed. He might want to talk to him about the other cases.
>
> So it certainly, to me, shows that -- shows that it was knowingly and voluntarily made. He already said to Officer Miller and Blair, "I don't want to talk about this," you know, "the incident that happened today with you." Then when it comes up that there's other incidences and then he's again advised of his rights, he obviously knew about his rights, chose not to exercise them in regards to the case involving the June 2nd incident. Okay.

Trial Tr. June 7, 2000 at 403-04. In other words, the trial court found that Petitioner had waived his right to counsel when officers questioned him at the police station.

13    - OPINION AND ORDER

Petitioner contends that the continued conversation with Detective Blair and his questioning at the police department amounted to continued custodial interrogation after invocation of the right to counsel, and that his statements should have been excluded at trial.

*Miranda* requires law enforcement officers to advise an accused of the right to remain silent and have an attorney present before conducting a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 473 (1966). If an accused requests counsel, "the interrogation must cease until an attorney is present." *Id.* at 474. A subsequent waiver of the right to counsel must be voluntary, knowing, and intelligent and requires more than an accused's response to "further police-initiated custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 482, 484 (1981). Accordingly, an accused who invokes the right to counsel may not be questioned "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85; *see also Michigan v. Harvey*, 494 U.S. 344, 350 (1990) (explaining that *Edwards* established a "prophylactic rule designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights"). The *Edwards* rule applies even if police officers initiate questioning about unrelated criminal activity or a separate investigation. *Arizona v. Roberson*, 486 U.S. 675, 683-84 (1988).

The trial court did not unreasonably find that Petitioner reinitiated communication with police by asking Detective Blair, "what's this all about?" and asking for information about other investigations. *Id.* at 687 (explaining that, once the right to counsel is invoked, the police "are free to inform the suspect of the facts of [a] second investigation as long as such communication does not constitute interrogation"). Thus, the admission of Petitioner's statement that "Nothing happened other than today" was not an unreasonable application of *Miranda* or *Edwards*.

14   - OPINION AND ORDER

Although a much closer question, it was not objectively unreasonable for the trial court to find that Petitioner's willingness to speak with Detective Blair extended to the subsequent questioning at the police department. The trial court found that Petitioner inquired about other investigations and sought information from Detective Blair, and this Court must accept a state court's factual findings absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Likewise, the trial court reasonably found that Petitioner's statements were voluntary, particularly when he was readvised of his *Miranda* rights and presents no persuasive evidence or argument that he felt coerced or that his will was overborne.

Given the deferential standard of review, the trial court's finding of a valid *Miranda* waiver was not based on an unreasonable determination of the facts or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Accordingly, Petitioner fails to establish entitlement to federal habeas relief on this ground.

### 6. Ground Six: Speedy Trial Violation

In Ground Six, Petitioner alleges that his right to a speedy resolution was violated when he was not returned to Oregon for sentencing within 180 days after he invoked the IAD.

After Petitioner was returned to Oregon in 2010, he moved for dismissal of the sexual abuse charge because he was not returned to Oregon for sentencing within the time required by the lAD. The sentencing court denied Petitioner's motion, explaining that while "the length of delay in this matter is significant," the delay was "mainly due to the actions" of Petitioner and "any delay attributable to the State in this matter is reasonable." Resp't Ex. 103 at 66. The sentencing court also found that Petitioner had no right to a speedy sentencing under the lAD, because Petitioner's attempted IAD request for a speedy disposition "was not forwarded to the Jackson County District Attorney." Resp't Ex. 103 at 66-67.

15   - OPINION AND ORDER

The Oregon Court of Appeals affirmed, holding that "we are in agreement with those other courts that have construed the language of the IAD and concluded that the IAD was not intended to apply to the transfer of a prisoner for a sentencing in a matter in which he already was convicted." *Sills*, 260 Or. App. at 398. Petitioner fails to show that the Oregon Court of Appeals unreasonably applied clearly established federal law.

"Forty-eight States, the Federal Government, and the District of Columbia …have entered into the Interstate Agreement on Detainers [IAD]…, an interstate compact." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). Article III of the IAD "establishes a procedure by which a prisoner incarcerated in one party State (the sending State) may demand the speedy disposition of 'any *untried indictment, information or complaint* on the basis of which a detainer has been lodged against the prisoner' by another party State (the receiving State)." *Carchman v. Nash*, 473 U.S. 716, 720 (1985) (quoting Art. III(a)) (emphasis added). It also "gives a prisoner against whom a detainer has been lodged the right to 'request' a 'final disposition' of the relevant charges, in which case 'he shall be brought to *trial* within one hundred and eighty days'" or "the relevant '*indictment, information, or complaint* shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.'" *Bozeman*, 533 U.S. at 150 (quoting Art. III(a), (d)) (emphasis added). Under the plain language of the IAD, it does not apply to sentencing detainers.

As noted by the Oregon Court of Appeals, this interpretation is supported by the reasoning in *Carchman*, where the United States Supreme Court held that the IAD does not apply to probation violation charges. The Court reasoned that, although a "probation-violation charge might be based on the commission of a criminal offense, it does not result in the probationers being 'prosecuted' or 'brought to trial' for that offense." *Carchman*, 473 U.S. at

16   - OPINION AND ORDER

725. The Court thus concluded that "a detainer based on a probation-violation charge is not a detainer based on 'any untried indictment, information or complaint'" under the IAD. *Id*. at 726.

Thus, the Oregon Court of Appeals reasonably found that a sentencing detainer is not based on an "untried indictment, information or complaint" and that Petitioner's rights under the IAD were not violated.

### 7.   Ground Seven:  Cumulative Trial Court Error

In Ground Seven, Petitioner claims that his conviction should be reversed due to cumulative trial court errors. In some circumstances, the cumulative effect of several errors may cause prejudice to the extent that a conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893 (9th Cir. 2003). Here, however, "Petitioner has failed to establish multiple errors of constitutional magnitude," and "there can be no accumulation of prejudice amounting to a denial of due process." *Lopez v. Allen*, 47 F.4th 1040, 1053 (9th Cir. 2022). Petitioner does not establish constitutional error and cannot obtain federal habeas relief on this ground.

### 8.   Ground Eight:  Disproportionate Sentence

Petitioner contends that his seventy-five month sentence violates the Eighth Amendment because it is grossly disproportionate to the conduct underlying the offense. *See Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("A gross disproportionality principle is applicable to sentences for terms of years.").

The Oregon Court of Appeals found that Petitioner's sentence of seventy-five months was not a grossly disproportionate sentence for a repeat sex offender convicted of several sex offenses, including felony convictions for child sexual abuse and charges of child pornography. *Sills*, 260 Or. App. at 399. Given Petitioner's criminal history, this is not one of the "exceedingly rare" and "extreme" cases for which the gross disproportionality principle mandates relief.

*Lockyer*, 538 U.S. at 73. Thus, the Oregon Court of Appeals did not unreasonably apply clearly established federal law when rejecting this claim.

### C. Actual Innocence

In Ground One, Petitioner also asserts that he is actually innocent. Typically, a compelling claim of innocence serves as a procedural "gateway through which a habeas petitioner must pass to have [an] otherwise barred constitutional claim considered on the merits." *Schlup v. Delo*, 513 U.S 298, 314-15 (1995). I do not find that Petitioner's claims are barred by procedural default, and review through the *Schlup* gateway is a moot point.

Petitioner likewise cannot sustain a "stand alone" claim of actual innocence, even if this claim was cognizable in a federal habeas action. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) (acknowledging that it is an open question whether stand-alone claims of actual innocence are cognizable on federal habeas review). The "threshold" for a freestanding claim of actual innocence is "extraordinarily high" and "would have to be 'truly persuasive.'" *Carriger v. Stewart,* 132 F.3d 463, 476 (9th Cir. 1997) (quoting *Herrera,* 506 U.S. at 417). A petitioner must "go beyond demonstrating doubt" about guilt and must "affirmatively" prove that the petitioner "is probably innocent." *Id.*

Petitioner presents no new evidence showing that he is "probably innocent." At trial, one of H's friends who witnessed the assault testified that the perpetrator wore Nike Airwalk shoes and identified Petitioner as the assailant. Tr. 176. Petitioner argues that he did not own Nike Airwalk shoes at that time and purports to present "new" evidence, a receipt for Airwalk shoes, that allegedly shows he purchased Nike Airwalk shoes several months after H's assault and could not have been the perpetrator. *See* Exhibits attached to Pet. (ECF No. 2-3 at 69).

18    - OPINION AND ORDER

The receipt provided by Petitioner does not indicate who bought "mens shoes" from Fred Meyer on December 1, 1999. Regardless, Petitioner presented similar evidence at trial through several witnesses who testified that Petitioner did not own a pair of Airwalk shoes until he purchased them in November or December of 1999. Tr. 443-44, 501-03, 516-17, 617. The jury was not persuaded by this evidence and found Petitioner guilty. An unauthenticated receipt supporting the same argument does not affirmatively prove that Petitioner is probably innocent.

## CONCLUSION

The Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED. A Certificate of Appealability is DENIED on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 28th day of March 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge